Timothy D. GABRIELSON, et al.,
Respondents,

v.

James L. WARNEMUNDE, d/b/a
Warnemunde Insurance Agency,
Petitioner, Appellant.

No. C6–88–1011.

Supreme Court of Minnesota.

Aug. 4, 1989.

Fred Jacobberger, James Fleming, Gilsdorf & Jacobberger, St. Paul, for petitioner, appellant.

Terence Meany, Leighton, Meany, Cotler, Enger & Seibel, Ltd., Austin, of counsel John Hagen, Minneapolis, for respondents.

KEITH, Justice.

This case presents the issue of whether an insurance agent is under an affirmative duty to update an insurance policy at the time it is renewed or to inquire whether any changes have occurred to the insured's property which would affect coverage. We hold as a general matter that, absent special circumstances in the relationship with the insured, an insurance agent is not under such a legal duty. Because no special circumstances exist in the present case, we reverse the court of appeals and reinstate the trial court's grant of summary judgment in favor of the insurance agent.

Appellant, Timothy Gabrielson, was injured in an accident in 1982 involving a boat owned by Raymond LaCanne. Gabrielson first brought a personal injury action against LaCanne. LaCanne's homeowner's insurance policy did not cover the claim, and the parties settled the suit. LaCanne assigned to Gabrielson any claims which LaCanne might have against his insurance agent, James Warnemunde. In the present action Gabrielson claims that Warnemunde was negligent in servicing LaCanne's insurance policy.

The homeowner's insurance policy at issue was sold by Warnemunde to LaCanne in May 1978. These men had known each other since their school days but were not close friends. In 1975, Warnemunde purchased a small insurance agency and began selling insurance. LaCanne had previously used two other agents to place his homeowner's insurance, but he switched in 1978 because he wanted to help Warnemunde in his new business, and because Warnemunde could reduce the cost of his insurance. LaCanne continued to purchase his auto insurance through another agent. In the application for insurance, LaCanne indicated that the policy was not to apply to watercraft. At the time, LaCanne did not own a boat. The policy issued to LaCanne contained an exclusion of coverage of watercraft powered by motors exceeding 25 horsepower. LaCanne did not read the policy, and Warnemunde did not specifically advise him of the watercraft exclusion.

The homeowner's policy was renewed in successive years. Warnemunde in his deposition said that his practice was to visit insureds at the time of renewal to discuss the policy and make changes, if necessary. He said that part of his responsibility at the time a policy was renewed was to see if there were any changes to the insured's property. He also said that he would often inquire whether the insureds had acquired snowmobiles, which would require a special endorsement. It was his experience that insureds do not know what is in their policies.

In April 1982, LaCanne purchased a boat with a 60 horsepower motor. LaCanne never told Warnemunde about the boat and he later stated that Warnemunde had no reason to know that he had acquired a boat. LaCanne never inquired about insurance, assuming that the boat would already be covered by his homeowner's policy. One month after he purchased the boat, in May 1982, the policy was renewed. At that time Warnemunde did not ask LaCanne if he had obtained a boat. Warnemunde claims that he would have recommended insurance coverage for the boat if had he known of its existence.

In August 1982, the boating accident occurred which severely injured Gabrielson. In the present action, Gabrielson alleged that Warnemunde owed a legal duty to LaCanne "to review his policy coverage at the time of renewal to determine whether

or not the policy covered those items of property owned by LaCanne; including watercraft with motors in excess of 25 hp." The complaint alleged that Warnemunde was negligent because he "failed to make inquiry as to any additions or changes in the ownership of property" by LaCanne.

The trial court granted summary judgment in favor of Warnemunde, ruling that he owed no legal duty to LaCanne to make periodic inquiries into whether his personal circumstances and insurance needs had changed. The court of appeals reversed, holding that summary judgment was inappropriate because under, the undisputed facts of the case, "a jury could find Warnemunde breached his duty of care in servicing LaCanne's policy." *Gabrielson v. Warnemunde*, 430 N.W.2d 866, 870 (Minn. App.1988). We now reverse.

■ On appeal from a grant of summary judgment, the role of the court is to review whether genuine issues of material fact exist, and whether the trial court erred in its application of the law. *Hunt v. IBM Mid Am. Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn.1986). The only factual dispute in this case is whether Warnemunde made annual visits to LaCanne's home at the time the policy was renewed to see if any changes had occurred. For the purposes of the motion for summary judgment, Warnemunde accepted LaCanne's version of the facts and agreed that he did not make annual visits, but simply renewed the insurance policy in a perfunctory way. In the absence of any other material factual disputes, the trial court properly ruled that summary judgment was appropriate.[1]

We review the trial court's grant of summary judgment solely for errors of law.

The negligence in this case was alleged to have occurred in May 1982, when the insurance policy was renewed shortly after LaCanne purchased the boat.[2] The precise question is whether an insurance agent has a legal duty to inquire about changed circumstances of his client and update the homeowner's policy at the time it is renewed.

■ The legal duty imposed on insurance agents is to exercise the skill and care which a "reasonably prudent person engaged in the insurance business [would] use under similar circumstances." *Johnson v. Farmers & Merchants State Bank of Balaton*, 320 N.W.2d 892, 898 (Minn. 1982). An insurance agent's duty is ordinarily limited to the duties imposed in any agency relationship, to act in good faith and follow instructions. 16A J. Appleman, Insurance Law and Practice § 8836, at 64 (1981). Absent an agreement to the contrary, an agent has no duty beyond what he or she has specifically undertaken to perform for the client. *Farmers & Merchants*, 320 N.W.2d at 898. Thus, the agent is under no affirmative duty to take other actions on behalf of the client if the typical principal-agent relationship exists. *See Urie*, 405 N.W.2d at 891; *see also* Appleman, *supra*, § 8836, at 64–66 (no duty exists to advise the insured unless the agent has held himself out as a consultant or counsellor.) However, if "special circumstances" are present in the agency relationship, the insurance agent may possibly be under a duty to take some sort of affirmative action, rather than just follow

1. The court of appeals held that his case should go to the jury for a determination of whether the facts and circumstances of the case give rise to a duty of care owed by Warnemunde to LaCanne. This is erroneous. The existence of a legal duty is a question for the court, not the jury. *Johnson v. Urie*, 405 N.W.2d 887, 891 n. 5 (Minn.1987); W. Prosser, R. Keeton, The Law of Torts § 37 p. 236 (5th ed.) (1984); Restatement (Second) of Torts § 328B (1965). The existence of a legal duty depends on the factual circumstances of each case. It is not, however, the jury's function to determine whether the facts give rise to a duty. Rather, the jury's role is to resolve disputed facts, upon which the court

then determines whether a duty of care exists. *Urie*, 405 N.W.2d at 891 n. 5. The facts in the case are essentially undisputed. The existence of a legal duty owed by the defendant Warnemunde to LaCanne is a question of law for the court.

2. The opinion of the court of appeals states that Warnemunde may be found negligent for not *initially* informing LaCanne of the watercraft exclusion when he first sold the policy to LaCanne. *Gabrielson*, 430 N.W.2d at 870. The complaint does not allege that this failure was negligence.

the instructions of the client. *See Urie,* 405 N.W.2d at 889, 890 (a duty to "offer, advise or furnish insurance coverage" may arise from the "circumstances of the transaction and the relationship of the agent vis-a-vis the insured."); *see also Osendorf v. American Family Ins. Co.,* 318 N.W.2d 237, 238 (Minn.1982) (admitted obligation to update insurance contract supported finding of negligence); *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271 (Minn.1985) (facts may give rise to a duty to offer additional coverage).

Once a policy has been issued, the insurance agent has only a limited duty to update the insurance policy. The agent has no "ongoing duty of surveillance" or obligation "to ferret out at regular intervals information which brings policyholders within the provisions of an exclusion." *Kashmark v. Western Ins. Cos.,* 344 N.W.2d 844, 847 (Minn.1984); *Tollefson v. American Family Ins. Co.,* 302 Minn. 1, 5, 226 N.W.2d 280, 283 (1974). The insured bears the responsibility to inform the agent of changed circumstances which might affect the coverage of the insurance policy, because the insured is in a better position to communicate those changes than the agent could be expected to discover on his or her own initiative. *See Tollefson,* 302 Minn. at 6–7, 226 N.W.2d at 284.

The question of whether Warnemunde had a duty to inquire into possible changed circumstances of the insured is controlled by the *Tollefson* and *Kashmark* cases. Warnemunde received no information to put him on notice that LaCanne had acquired a high powered boat, and therefore cannot be liable for failing to discover that fact. Although Warnemunde had no duty of surveillance of the policy, or to ferret out the changed circumstances of the insured, Gabrielson nevertheless argues that "special circumstances" exist in this case to impose upon Warnemunde the duty to update the policy. *See Urie,* 405 N.W.2d at 889. The only case in which we have imposed an affirmative duty on an insurance agent to update the policy of an insured is *Osendorf v. American Family Ins.,* 318 N.W.2d 237 (Minn.1982). In *Os-*

*endorf,* the insurance agent was held liable for negligence in failing to advise the insured to obtain other needed coverage during the ten year period the policy was in effect. The insured in that case was a farmer who because of his limited education could not read much of the insurance policy and therefore relied on his agent to help select the proper coverage. His first agent misrepresented to him that part-time farm workers would be covered under the policy. In fact, they were excluded. His second agent, whom he sued, serviced the policy for ten years, making ten visits to the farm. The agent was aware or should have been aware of the fact that the farmer employed part-time workers, and that they were not covered by the policy but he never advised the insured of this gap in coverage. We held that there was sufficient evidence to support the finding of negligence. *Id.* at 238. In a later case we explained that liability was imposed in *Osendorf* partly because of the misrepresentation of the first insurance agent. *Urie,* 405 N.W.2d at 889. In the *Urie* decision we identified other special circumstances in *Osendorf* which supported the existence of a duty to update the policy: (1) The agent knew that the insured was unsophisticated in insurance matters, (2) he knew that the insured was relying upon the agent to provide appropriate coverage, and (3) he knew that the insured needed protection from claims of farm laborers. *Urie,* 405 N.W.2d at 889–90.

The special circumstances Gabrielson cites as giving rise to the duty include LaCanne's long acquaintance with Warnemunde, Warnemunde's knowledge that LaCanne's family had owned a lake resort and his knowledge that the family members were avid fishermen. It is argued that these factors should have put Warnemunde on notice that LaCanne would some day acquire a boat. In addition, Gabrielson argues that the unclear language of the watercraft exclusion warrants the imposition of an affirmative duty on Warnemunde to inquire into whether LaCanne had purchased a high powered boat. He also claims that an affidavit from an experienced insurance agent stating an opinion

that Warnemunde's conduct was negligent establishes an affirmative duty. But most importantly, according to Gabrielson, is Warnemunde's admissions that it was his responsibility at the time the policy was renewed to determine whether there have been any changes in the property of the insured, and that most insureds are unfamiliar with their policies and rely on their agents. Gabrielson argues that this statement and Warnemunde's prior practice of inquiring into whether insureds had acquired snowmobiles at the time he renewed their policies placed Warnemunde under a duty to inquire about the acquisition of new property at the time of renewal.

■ The testimony of the experienced insurance agent that Warnemunde did not exercise the necessary skill and care in renewing LaCanne's policy, while important in establishing a standard of care, does not by itself establish a legal duty to exercise that care for the benefit of the insured. Moreover, Warnemunde's admission that he had a responsibility to update the insurance policy is not sufficient to establish that as the standard of care which he has a legal duty to use. The standard of care for an insurance agent is to perform at the level of skill of a reasonably prudent person in the insurance business. This is an objective rather than a subjective standard. If Warnemunde felt an obligation to perform his duties at a higher level of skill and competence, that is commendable, but he should not be legally held to that standard of conduct—unless he holds himself out as a person exercising greater levels of skill and care, or his client relies on his promise to use greater skill and care. *See generally* Prosser & Keeton, *supra* § 32, at 185–187. The record does not indicate that Warnemunde promised to exercise any greater skill or care with respect to servicing LaCanne's policy.

■ The other circumstances cited by Gabrielson are also insufficient to establish a legal duty. LaCanne's long acquaintance with Warnemunde may have created a higher level of trust, but it is apparent that LaCanne did not place great reliance on that trust. LaCanne did not place all of his insurance needs into the hands of Warnemunde but rather, used another insurance agent as well. LaCanne switched his homeowner's policy to Warnemunde's agency partly because he knew him, but also because his homeowner's insurance would cost less through Warnemunde. This stands in contrast to *Osendorf* where the long relationship of the agent and insured created a sense of trust and where the insured placed all of his insurance into the hands of his agent, and necessarily relied on him to provide adequate coverage because he was unable to read much of the insurance policy himself.

The fact that Warnemunde knew that LaCanne grew up on a lake resort, surrounded by fishing boats, is not enough to put him on notice that LaCanne would acquire a boat with a high-powered motor. In *Osendorf,* the agent had knowledge of the insurance needs of the insured. He had visited the insured property, and was aware or should have been aware that part-time workers were employed. LaCanne did not have a boat at the time he purchased the policy, and did not live on a lake. Warnemunde had neither actual knowledge nor any reason to know that LaCanne had acquired a boat in 1982.

■ Finally, we disagree with the assertion that the confusing language of the watercraft exclusion is a circumstance which created an affirmative duty on Warnemunde to update the insurance policy at each renewal. Ambiguous or confusing language in an insurance policy does not, by itself, create a special obligation on the part of the insurance agent. There is simply no evidence that Warnemunde had reason to know of LaCanne's purchase of a boat, or that LaCanne placed any special reliance on Warnemunde to explain the policy, or expected Warnemunde to take the initiative to make sure that he was adequately covered by the insurance policy.

In sum, the circumstances of this case are not sufficient to impose a special affirmative duty on the insurance agent. Under the present facts, the trial court was correct in concluding that no duty existed. Because of our holding, we need not reach

**546**

the issue addressed by the court of appeals of whether expert testimony is required to establish the standard of care of an insurance agent.

Reversed.