**Terry AESOPH and Steve Aesoph, Plaintiffs and Appellants,**

**v.**

**Richard KUSSER, d/b/a Kusser Insurance Agency and North Central Crop Insurance, Inc., Defendants and Appellees.**

**No. 17960.**

Supreme Court of South Dakota.

Submitted on Briefs on Feb. 10, 1993.

Decided April 14, 1993.

Curt R. Ewinger, Rice and Ewinger, Aberdeen, for plaintiffs and appellants.

James C. Robbennolt, Olinger, Lovald, Robbennolt & McCahren, Pierre, for defendants and appellees.

## PER CURIAM.

Terry Aesoph (hereinafter "Terry") and Steve Aesoph (hereinafter "Steve") appeal a trial court order dismissing their action for negligent misrepresentation against

Richard Kusser, d/b/a Kusser Insurance Agency (hereinafter "Kusser") and North Central Crop Insurance, Inc. We reverse and remand.

## FACTS

Kusser is an insurance agent who writes crop insurance policies for farmers. Terry testified that he contacted Kusser about procuring federal crop insurance and that Kusser told him they were not eligible for federal crop insurance because they were not participating in the federal farm program. In fact, there was no such requirement for eligibility for federal crop insurance. The only requirement was that the applicant had filed a Form 1026 which certified compliance with the Sodbuster/Swampbuster provisions of the Food Security Act of 1985. There was undisputed testimony that both Terry and Steve were in compliance with those Sodbuster/Swampbuster provisions and would have been eligible for federal crop insurance if they filed a Form 1026. Terry and Steve testified that they relied on Kusser's answer and as a result did not make any other efforts to obtain federal crop insurance. Kusser testified that he told Terry and Steve they were eligible and they only had to file a form. Unfortunately, Terry and Steve each had a total crop failure in 1988.[1]

Although there were conflicts between the testimony of Terry and Steve and Kusser, *the trial court did not resolve those factual conflicts.* Instead, the trial court held that no action for negligent misrepresentation could lie against Kusser because there was no contractual relationship between him and Terry or Steve.

## ISSUE

Did Kusser have a duty to exercise care when answering questions about the Aesoph's eligibility for federal crop protection?

---

1. Terry had a complete failure on 625.5 acres of wheat and 110.5 acres of corn. Steve had a return of only 1.25 bushels average on 52.7 acres of corn.

## DECISION

It is a question of law whether such a "duty" existed. *See Trammell v. Prairie States Ins. Co.,* 473 N.W.2d 460 (S.D.1991). The issue is straightforward, but is made to look more complicated because both parties cite to cases involving other types of negligence actions. It is important to remember that this case *only* involves a claim of negligent misrepresentation.

■ South Dakota was one of the first states to recognize negligent misrepresentation as a cause of action. *See Moore v. Kluthe & Lane Ins. Agency, Inc.,* 89 S.D. 419, 234 N.W.2d 260 (1975) (discussing *Boos v. Claude,* 69 S.D. 254, 9 N.W.2d 262 (1943)). We have consistently said the requirements to prove negligent misrepresentation are:

> there must be knowledge, or its equivalent, that the information is desired for a serious purpose; that he to whom it is given intends to rely and act upon it; that, if false or erroneous, he will because of it be injured in person or property. Finally, the relationship of the parties, *arising out of contract or otherwise,* must be such that in morals and good conscience the one has the right to rely upon the other for information, and the other giving the information owes a duty to give it with care. (emphasis added).

*Moore,* 234 N.W.2d at 264 (quoting *Boos,* 69 S.D. at 260, 9 N.W.2d at 264). *Moore* involved an insured who was claiming his insurance agent had represented that an insurance policy covered flood damage. This Court held that because of the relationship between the insured and the insurance agent, the insurance agent had a duty to exercise care when giving information. "Our court has recognized the right of an insured to rely on the superior knowledge of the agent respecting insurance matters." *Moore,* 234 N.W.2d at 265 (citing *Craig v. National Farmers Union Automobile & Cas. Co.,* 76 S.D. 349, 78 N.W.2d 464 (1956)). We went on to quote approvingly from a Minnesota case which held:

> The disparity of the parties must also be borne in mind. Ordinary men are not usually acquainted with all the intricacies of insurance contracts, while the insurer is presumed to be an expert on the subject; and it is a matter of common knowledge that the insured are accustomed to rely largely on the insurer for information as to their rights and liabilities.

*Moore,* 234 N.W.2d at 265 (quoting *Colby v. Life Indemnity & Inv. Co.,* 57 Minn. 510, 59 N.W. 539 (1894)).

The issue before the Court in this case is slightly different than that presented in *Moore.* Here, Steve and Terry were not yet insureds of Kusser. They merely asked him if they could purchase federal crop insurance. They claim he said they were not eligible. Here, the trial judge never resolved the conflicts in the testimony about exactly what Kusser told the Aesophs. The trial court resolved the case on purely legal grounds by holding that no action for negligent misrepresentation could lie, because Kusser had no duty to exercise care in answering their questions since there was no contractual relationship between Steve and Terry and Kusser.[2]

■ We hold that the trial court was incorrect when it held, as a matter of law, that there had to be privity or a contract between the Aesophs and Kusser in order for a negligent misrepresentation action to lie. This Court has never imposed such a privity requirement. Instead, we have stated that "the relationship of the parties, arising *out of contract or otherwise,* must be such that in morals and good conscience

---

2. Kusser relies on *Fleming v. Torrey,* 273 N.W.2d 169 (S.D.1978). In that case, the insured was suing the insurance agent because the agent had not suggested a higher limit of liability. This Court held that the insurance agent had no duty to "volunteer advice." However, we went on to indicate that such an "additional duty" could be assumed depending "upon the particular relationship between the parties."

Here, the insurance agent was asked one question. He allegedly gave an erroneous answer to that question. There is no allegation that he should have volunteered any more advice. All the Aesophs allege is that he was negligent in giving advice which was erroneous.

the one has the right to rely upon the other for information, and the other giving the information to give it with care." *Littau v. Midwest Commodities, Inc.,* 316 N.W.2d 639, 644 (S.D.1982) (emphasis added).[3] *See generally, Block v. Neal,* 460 U.S. 289, 103 S.Ct. 1089, 75 L.Ed.2d 67 (1983).

The evidence before the trial court shows the eligibility requirements for federal crop programs are complex. The settled record contains Section I (General Information) of a manual concerning federal crop insurance which consists of seven pages of single spaced information. This represents the kind of detailed information a lay person would rely upon an insurance agent to understand.[4]

The Aesophs asked Kusser a question about their eligibility for federal crop insurance. Kusser had no obligation to provide any answer. However, when he chose to provide an answer he changed the relationship and undertook a duty to exercise care in providing the answer. Given that situation, the Aesophs may be said to have had a right "to rely on the superior knowledge of the agent respecting insurance matters." *See Moore,* 234 N.W.2d at 265. It is that relationship between the parties involving the complex matter of eligibility for federal crop insurance which should be considered. *See Littau,* 316 N.W.2d at 644 (citing *Fleming v. Torrey,* 273 N.W.2d 169 (S.D. 1978)).

The trial court erred on a matter of law. However, many factual issues remain to be resolved including questions about what Kusser told the Aesophs. Reversed and remanded for further proceedings consistent with this opinion.

---

**3.** *See also* the commentary to the Restatement (Second) of Torts, § 552 (1977) which specifies that no privity is necessary. Another authority expresses the matter succinctly:

Broadly speaking, it may be generalized that privity of contract is *not* an essential prerequisite to maintenance of a successful action for negligent representation.

Stuart Speiser, et al., The American Law of Torts § 32.74 (1992).

---

MILLER, C.J., and HENDERSON, WUEST, SABERS and AMUNDSON, JJ., participating.

---

**4.** The statute authorizing licensing of insurance agents explains their function in the following terms, in part:

The purpose of a license issued under this chapter to an agent as defined in § 58–30–1 is to authorize and enable the licensee actively and in good faith to engage in the insurance business as an agent to the general public, and to facilitate the public supervision of such activities in the public interest.

SDCL 58–30–36.